STOKER, Judge.
This suit arose out of a verbal agreement to sell immovable property located in St. Landry Parish. Plaintiff Tazie Manuel filed suit against defendant Rena Pitre for breach of the verbal agreement. Plaintiff sought specific performance of the agreement and in the alternative damages and a refund of monies paid. Judgment was rendered against plaintiff denying specific performance and damages but recognizing the claim for a refund of monies paid. Plaintiff Tazie Manuel appeals this judgment. We affirm.
The issue on appeal is: Whether this court should recognize a verbal sale of immovable property between the parties.
FACTS
The parties to this suit are sisters. They are the daughters of Horace Manuel who died on November 10, 1977. The house and 40 acres which are at the center of this dispute were part of the estate of Horace Manuel. Defendant received the 40 acres as a bequest from her father. A house, barns, and other improvements located on the 40 acres were not bequeathed to the defendant in full ownership. In November shortly after the death of Horace Manuel his four children met and agreed to sell their interests in the house and other improvements to defendant for $5,000. The three selling children were to each receive Vs of this sum. Although the record contains no proof of this sale, it was apparently accomplished. On the following day defendant agreed to sell the house and 40 acres to plaintiff. Plaintiff testified that the total price of the sale for the 40 acres, the house and other improvements was to be $50,000. No written agreement to buy and sell was ever entered into between plaintiff and defendant. Defendant stated in a deposition that an agreement to buy and sell had been made but that the sale price of the property was $75,000. At the time of the agreement in November, plaintiff gave defendant $5,000 (representing the amount defendant had paid for the house and other improvements on the previous day) and $700 as “forfeit money”. This “forfeit money” was to guarantee that plaintiff did not back out of the agreement to buy the property. On November 15, 1977, plaintiff gave defendant a money order for $3,000. Plaintiff testified that defendant accepted the money order with the knowledge that it was further payment on the property and that the defendant accepted it without indicating that she had changed her mind about the sale. Defendant testified that she did not want to accept the money order and attempted to persuade the plaintiff to take it back. The money order was deposited in a bank by defendant on December 5, 1977.
On January 31, 1978, the defendant informed the plaintiff that she was entitled to an additional sum of $1,667.00 representing the defendant’s share as heir of the profit from the sale of her interest in the house and other improvements. Plaintiff honored this contention and made payment of the amount. This payment to the de *776 fendant was made in the form of plaintiff s personal check for $862.00 and by allowing the plaintiff an $805.00 credit representing a rental payment made on the 40 acres. This rent check was made payable to the defendant but the parties agreed that the rent belonged to plaintiff because the defendant had sold the land to plaintiff.
On March 1, 1978, defendant obtained title to the 40 acres by act of delivery of legacy from the Succession of Horace Manuel. On March 7, 1978, plaintiff had an attorney prepare an act of cash sale for the 40 acres and attempted to deposit money with the attorney representing the balance owed the defendant. The attorney refused to hold this money for plaintiff. The cash sale reflected a consideration of $24,000. The act of sale was never signed by the defendant.
Following the drafting of the act of sale plaintiff testified that she visited defendant at the hospital for the purpose of obtaining defendant’s signature on the cash sale form and paying defendant the balance owed. Defendant testified that plaintiff came to the hospital but did not have “sale papers” although she did have money. Defendant testified that at this time she told plaintiff she was not going to sell.
On March 7, 1978, defendant sent plaintiff a $3,000 check with a note which said: “$75,000 is not sufficient”. Plaintiff returned this check to defendant and at trial testified that this was the first indication she had that defendant was unwilling to sell. On March 30, 1978, defendant again mailed plaintiff a check and a letter which said: “Like I told you $75,000 is not enough money”.
On April 18, 1978, plaintiff’s attorney sent defendant a letter requesting performance of the November agreement. Suit was filed May 8, 1978. At the time of trial on October 23, 1979, plaintiff was residing in the house on the 40 acres.
The trial court refused to order specific performance of the verbal agreement between the parties. It found that there had been no meeting of the minds of the parties as to price and therefore no sale. The court also found that it was unclear whether a separate sale of the house and improvements apart from the 40 acres was contemplated by the parties. Defendant was ordered to refund the $9,562 paid by the plaintiff pursuant to the agreement.
ALLEGED CONFESSION OF AGREEMENT TO SELL
In this appeal, and for the first time, plaintiff relies on an alleged confession of an agreement to sell made by the defendant in a deposition given by defendant. The pertinent portions of the deposition testimony given by defendant Rena Pitre are as follows:
“Q But in November you did agree to sell the property to your sister?
A Yes
Q What terms did you agree upon at that time, in November, with your sister, by terms I mean what price did you and your sister agree on?
BY THE WITNESS: (To her attorney, Mr. Lomenick)
Q Can I tell?
A Yes.

Continued by the witness :

A Seventy-Five Thousand ($75,000.00).
* as H! s}¡ * *
You-usually these [sic] type of situation, Mrs. Pitre, a lot of times people are conscious of the tax things, consequences, and this, that and the other. And so some times people will make a deal that, “okay, I’m gonna sell my property for so many dollars but I don’t want all of it to show on the sale because I — it’ll cost me so much money for taxes and this, that and the other,” is what you were trying to tell me? ,©
Yeah, well, on-her, she started that herself. So then I just said, well, okay, good.
So . . ¿O
But that was not gonna be talked about. >
*777 Q I understand that. So basically, what happened was that you agreed to sell and she agreed to buy for $75,000.00 Dollars but it was agreed between the two of you that the $75,000.00 Dollars wasn’t going to be talked about, is that correct?
A Right.”
In plaintiff’s original suit filed May 8, 1978, she alleges an agreement was made for a sale at a price of $50,000. On September 27, 1978, plaintiff amended and supplemented her petition in certain respects but reiterated her allegations that the agreed sale price was $50,000.
LSA-C.C. art. 2275 provides as follows: “Art. 2275. Verbal sale of immovables. Every transfer of immovable property must be in writing; but if a verbal sale, or other disposition of such property, be made, it shall be good against the vendor, as well as against the vendee, who confesses it when interrogated on oath, provided actual delivery has been made of the immovable property thus sold.”
Before this court plaintiff-appellant Ta-zie Manuel makes two contentions which are inconsistent and can hardly be considered as permissible alternative contentions. First, plaintiff-appellant contends the answers given by Rena Pitre in the sworn deposition prove there was an agreement to sell for $50,000. Second, appellant contends that if the “confession” does not prove an .agreement at a price of $50,000, the “confession” at least proves an agreement to sell for $75,000. On this point plaintiff suggests in her brief that, at most, a credibility problem was presented, and the trial court should have resolved the issue by deciding that there was an agreement for one price or the other.
These contentions are not correct. Had plaintiff-appellant alleged in her petition that an agreement for a sale at $75,000 had been confessed under oath by her sister, there might be some merit to the attempt to rely on the deposition testimony. Without passing on the question of whether a confession of the nature referred to in LSA-C.C. art. 2275 may be made in a deposition, we hold there was never an agreement as to price as a result of the alleged confession.
ELEMENTS OF AN AGREEMENT TO SELL
The three essential elements of a sale are the thing, the price and the consent. LSA-C.C. art. 2439. There must be a meeting of the minds of the parties as to the object to be sold and the price. The price must be certain and should be fixed and determined between the parties. LSA-C.C. art. 2464.
The record in the present case reflects that the parties did not have a meeting of the minds as to price. Plaintiff testified[1] that she agreed to purchase the house, other improvements and 40 acres for $50,000. At Tr. 41, Vol. 2, plaintiff testified:
“Q All right, now, fifty thousand, was that supposed to —
A For the whole thing, all the property and the house and improvement (sic), everything that was on the property.”
The defendant in deposition stated that she agreed to sell the property for $75,000 and that she later informed plaintiff that $75,000 was not enough and refused to complete the sale for this reason.
The plaintiff and defendant failed to agree on a price. Without a certain price there can be no sale.

AFFIRMED.

FORET, J., concurs with reasons.

. This testimony also reflects that it is unclear whether plaintiff and defendant contemplated a separate sale of the house and other improvements apart from the 40 acres. Plaintiff did not pray for a separate sale of the house and other improvements. This point is one we do not reach inasmuch as we find there was no agreement as to the price.